Illinois at all. On behalf of the F1, this is Yolanta Zenevich. On behalf of the F1, this is Harriet Thomas. Whole side ready to proceed? Yes. Alright, then you may proceed when you're ready. Good morning. My name is Yolanta Zenevich. I'm one of the attorneys for the Appellant Wayman Fellow in this case. And I'll just jump right in here. The Board of Fire & Police Commissioners Act has two purposes. It exists for two different reasons. The first reason is to set the criteria to hire good people and to set the criteria to promote good people. But the second reason why it exists is to protect the employees from arbitrary and capricious decisions of the Board. And in this case, that's exactly what happened. Let me ask you a special question. I think you've appealed on two distinct bases. I believe you're taking issue with whether or not the officer violated either departmental regulations or state law. Secondly, you're appealing whether or not the decision was too harsh in the overall context. Is it your position that the officer did not in any way violate either departmental policy or the state statute? Is that your position? Well, I think if you look at the circumstances, he was either a sergeant at the time, he was a supervisor at the time, he had the written authority of the chief of police to do what he did. But even if he did violate the statute or the rule, it was a technical and minor violation based on the circumstances of the situation and of this case. You're talking about the fact that he was the ranking officer on the scene. Right. And also the circumstances of the case of having the time limitations that he did with having the arrestee have two pill bottles in the car that were found in the car. One of the pill bottles had a little baggie in it, which is well known to be used by drug dealers to transport drugs. And he's putting this person now in a jail cell and needs to make sure that the jail cell is protected and that the individuals in that prison and the officers are all safe from contraband and are safe from any weapons that might be brought in. I think you can make a pretty compelling case that there was a reasonable justification for the search. However, there's also the issue, aside from the ranking officer, wasn't he required to document this specifically in the police report? And that didn't happen here, did it? Well, it doesn't necessitate a written report. What it says is a report. And we do have a live video of everything. Doesn't 103.1F say written report? I think your argument was that the video would take the place of a written report. It would, but I don't think the statute or the rules says that it needs to be a written report. It just says the following things need to be included in your report. A copy of the report must be provided. I see. So you're saying it doesn't say written report. Right. If the legislature intended for there to be specifically a written report, they would have said that. And I think even if they did, we do have a DVD of everything that happened. The other thing that the officer put in his report is that this individual was processed by the department procedures. And that would include putting the individual in a orange jumpsuit, which necessitates him to take off all of his clothes and be put in that jumpsuit. Now, you indicated that if he violated 4.6 or 103.1F, even if you concede that he violated those, that this is technical and he shouldn't have been fired for that. How about the cumulative effect of the 15 separate incidents that were waged against him over the past years? Well, I think that's putting the cart before the horse because before you can get to the discipline, the prior discipline, you have to find cause first. And my argument to you now is that all of the circumstances in this case do not rise to the level of cause. But even if it does, this officer has been on the job for 15 years. If you look at his record, over the 15 years, he had many letters of accommodation. He's had good performance evaluations. Even the last evaluation before this occurred rated him as a valued performer. Everything that happened, all of these disciplinary issues, I'm not arguing he has an outworn record. He certainly does. But all of this happened within the last couple of years of his employment. And if you look at what occurred here, it was the chief of police imposing this discipline on him. It was never taken to the board for more than five days. If he wanted to, he could have done that. Officer Brown took his medicine. He took his punishment. And he didn't appeal this. In this particular case, there was no cause. And even if you find cause, he's a good officer. He did what was necessary under these circumstances. All right. If I understand your point, it's that these violations were of a technical nature. They were de minimis in the overall scheme of things, okay? And therefore, you know, it would appear to be overly harsh to terminate somebody with an otherwise good record. One of the things that I want to ask you about, there wasn't there – doesn't the evidence establish that at one time he lost his rank of sergeant because of some incident in the department? Well, I think if you look at how he lost that rank, it was by the action of the chief of police. And it was said that it was a voluntary demotion. But the only people that can demote, if they even have this ability to, would be the Board of Fire and Police Commissioners. And that's under the Board of Fire and Police Commissioners Act. Now, the act itself does not specifically say you can do step downs. But if it were in there, it would have to be the board to make that decision. And in this case, the board didn't even know this happened. The board wasn't involved, and it didn't approve it. It was the chief of police, and it was an illegal demotion. But it stemmed from some alleged, quote-unquote, incident. Something happened that caused him to voluntarily surrender his rank. Well, I think Officer Vela, if you read the record, he was concerned about his job. And that was the only reason he accepted this demotion, is because he was concerned that he was going to lose his job. Now, how would you respond to this question? Generally speaking, I think it's fair to say that in most of these instances, you would like to see some type of progressive discipline. You don't want somebody to lose their job because of some technical violation, maybe the first or second time. But if you have some history of these incidents, some suspensions, loss of rank, the other side is going to argue, well, hey, there was a progressive discipline here. You're saying it's harsh, and yet this was not the first or second time there was a problem. So how do you respond to that argument? But I think it's still putting the horse before the cart, because if you don't find cause, you can't get to that step two. Well, if you find cause, let's assume that we find that there was a violation technically, albeit a violation of the rules. Now you're on to – I'm assuming you don't want to go all in, so to speak, on the technical thing. Because if you lose on that, then you're not addressing the other part of the important issue. So what is your response about why this was not appropriate progressive discipline? Well, I think, again, it's looking at his career over 15 years and looking at all the letters of accommodation, looking at his performance evaluation. If, in fact, he was such a bad employee, why was he rated as a valued performer? Just the previous evaluation that he received. If the chief of police believed him to be so bad and there were so many deficiencies in his work, why are all the evaluations positive? And why is he getting all of these letters of accommodation? So what's your position as to why he was fired? I think if you look at the record, you can see that the chief in his initial – when he brought in the case and he went in front of the board, the first thing he tried to do was bring up his disciplinary record. Now, the way that these things are set up, it's a two-step process. The first step is you have to prove the allegations. You can't get to the second step until you get that. But he immediately wanted to bring those disciplinary – the prior disciplinary action. I think it was just the chief of police looking for any reason to fire him. But, you know, it's – the record speaks for itself. Strip searches are a pretty sensitive issue with police departments. They can be sued civilly at the drop of a hat over a strip search. So how do you justify this being a technical violation? Well, I think if you look at the circumstances, this individual in the record, Officer Vela, testifies. He has a reputation of being a drug dealer. They were – he set up a sting operation. The proposed defendant, you mean? I'm sorry? The defendant? Yes, the arrestee. The – Officer Vela set up the sting operation. He showed initiative in setting this up. Once the person was pulled over, the vehicle was searched. In the vehicle, they found two pill bottles that were not in this individual's names – in his name. So he had controlled substances that were not in his name. And one of the pill bottles – Right. I recall you said that just a few minutes ago. I'll grant you that. But weren't there some alternative things that this officer could have done other than to conduct a strip search in violation of the local department rules? I don't think he violated the rules, and I don't think he's violated the statute. But if he did, the alternative would have been not to set up this operation. The alternative would have been not to arrest the individual and not to search him at all. How about to put him in a cell and put somebody to watch him? I think because – Until you were able to contact the superior to determine whether or not it was appropriate to do. Well, Officer Vela had a subpoena to be in court at 3 o'clock in a different department. He had to go to court. He was subpoenaed to go to court. So the time limitation was very small. And he was also concerned, and it's in his testimony, that this person might have ingested whatever it is that he might have been carrying. And how was he going to fix that with a strip search? Well, I think during this time what he did is he asked the individual to give a urine sample. And one of the reasons for doing that is not necessarily to get back the results but to see what the person will say. And if they're willing to give it to you, it's an indication that there's nothing there. But if they're apprehensive and give it to you, you know, there's certainly the likelihood that he took something. But even if you have somebody observe, all it takes is two seconds of your eyes off this person. He swallows the drugs and goes into a coma and dies. And then we have a lawsuit either way. So no matter which way Officer Vela would have acted here, we would still be here. Because if he didn't do the strip search, he would have been violating other rules. And the chief of police would have came after him for that, for not putting him in a jumpsuit and also not strip searching him and making sure he didn't bring any drugs and that he didn't bring any weapons into the jail. So either way, we would still be here, in my opinion. What is our standard of review? Well, I think because you are reviewing the board's impression of the statute itself, of the law, that it would be de novo. But if you do find that this is a mixed question of law and the fact, because we have facts, special circumstances, then clearly a wrongness would be. Why not de manifesto? That's usually the standard in administrative appeals, isn't it? Well, if you're only reviewing the facts of the case, that would be the case. But in this situation, we have a law, we have a specific statute that the board was looking at and they were interpreting. And I think in reviewing their interpretation of that, there is a question of law here. Or are you saying at least a mixed question? At the very least, a mixed question. Doesn't the case law tell us that even if we think that there's another sanction that might be more appropriate, that the board's decision still has to stand? If it's not – if you find that it's not arbitrary and capricious, yes. But I believe under the circumstances, it is arbitrary and capricious. And under the circumstances, I do believe that there was no cause. And there's case law that does say that if it's a technical and minor violation, if that's what you find, that is not – that does not raise to the level of cause. Well, I think the cases that you cited with respect to technical violations and minor violations, those individuals have one single incident as opposed to your client who had 15 different incidents. Right. But if we never establish cause, we don't get to that second stage. So if this was – what the board had to do was look at the allegations themselves first. Correct. Now, if they find that there was no cause, they don't get to the second stage. And I believe under the circumstances, they should have never found that there was cause. Not to belabor that point, but it varies trying to pin down. What is the standard for the board to find cause? Now, the board interpreted this or found that there should have been some report aside from the DVD. Okay? So, I mean, the board found that there was cause. There was some violation, you are doing technical, however, of the departmental rules in the state law. So what's the standard of proof? The board found there were violations. Are you saying they just did this capriciously and arbitrarily? There was no evidence establishing these violations? Well, I'm not arguing that an officer should be allowed to break the law. That certainly is not what I'm arguing here. What I'm saying is that there are circumstances that necessitate the law to be flexible. And we find that in murder. Obviously, murder is generally not acceptable. Are you arguing that there was no violation or, yeah, there was a violation here, but the totality of the circumstances mitigate the violation so we never get to phase two? Well, my argument is that there was no violation. If you look at the fact that he was a shift supervisor, he was a sergeant, he did have a written permission of the chief of police, and there was a DVD in his report. He specifically said he was processed according to the department rules. He also said go ahead and see the other report of the other officer who was involved. All of that is in compliance with the statute and the general rules. So that's the argument is perhaps these are technical legal requirements, and since he was the ranking officer there and since there was a DVD, he also, quote, unquote, technically complied with the statutes. Maybe not literally, but technically he did. It seems to be what you're saying. Well, the first argument is that he did comply. Secondarily, if you do find that he did not comply in the alternative, then I would say that the violation is a technical and a minor violation based on the circumstances of this particular case. Now, I would not say that if it was a different type of case. I wouldn't say it if there wasn't these circumstances that we have here. But based on what happened here, I believe that there should be some flexibility and this is a technical and minor violation. Counsel, didn't Willits and Biscaglia testify that they told him not to do the strip search? Well, I know one of them had told him that in his opinion he should have contacted the supervisor. Both of those officers were less senior than he was, and both of them were not the supervisors on call. Officer Vela made a judgment call, and in hindsight maybe he could have done things differently. But he made a judgment call based on the time frame. He made a judgment call based on the fact that even if he called somebody, maybe they wouldn't have called him back. And he made a judgment call, and that's the call he made. So he was in a hurry, basically, to get to this court date for his other job, correct? It was his duty to get to the court date, yes. And there was also an order of the chief of police basically saying that there should be no overtime. And if he would have stayed past 2.30, that would have necessitated overtime. And, again, he probably would have been brought on charges for violating that order. No, there were times in the past where he was in a hurry and didn't process the correct paperwork on it, DUI, correct? I know he's had some certain disciplinary actions. Several, a couple disciplinary actions with respect to not concluding the paperwork because he was in a hurry. No, the board indicated that one of their findings was based on the fact that there was a trend in his evaluations and a trend in his performance on the job. Do you not see or tell us why we should not be so convinced or concerned with a trend of this particular officer being less than diligent in his paperwork? Well, I think, once again, you have to look at the fact that he's been on the job for 15 years. He's been on the job for a long time. And throughout this job, his 15 years, he's gotten good reviews. Even the last review was valued performer. So if he was such a detriment to the department, as the chief is now alleging, why would he get these letters of accommodation? Why would he get these good performance evaluations? Certainly they could have offered for him to supplement his report, but that was never offered. Well, if he's been on the force 15 years, shouldn't he know when he has to do a written report and when he doesn't have to do a report and when it has to be done on time? Well, I think that you also have to look at the fact that a lot of this disciplinary action is happening in the last letter part of his career. So, excuse me, you have to ask yourself what is going on here. Is it really that he's such a detriment or is it the chief just looking for something to get rid of him? You'll have a chance to reply. Okay, thank you. You wish to offer an argument? Yes. You may proceed when you're ready. Thank you. May it please the court. Mr. Levitch, Mr. Breuer. Thank you very much for allowing me an opportunity to argue on this case today. The board in this case heard mostly uncontradicted evidence. It heard evidence that Officer Bella never contacted a supervisor for authorization of this strip search. Now, he didn't attempt to. He never fought to. And, in fact, when he was specifically told by another officer that he should, in fact, contact a supervisor, he said he didn't need to. Well, your opponent says that he's a sergeant and he didn't need to. Well, I would respectfully disagree with that position. He was not a sergeant. He entered into a written agreement for reduction of rank prior to this incident. Now, although counsel has raised an argument that I don't believe really is relevant to this, that it was an illegal reduction in rank, the statute, the commission statute, very clearly says that you can bargain settlements for discipline. And that's exactly what happened here. He bargained for this reduction in rank. He voluntarily took it. He had counsel. He signed off on it. And so for him to think that he was, in fact, still a sergeant is not supported by any indication from his employer. And the fact that he was the most senior ranking officer on duty at that time, what's your response to that? Well, certainly seniority would indicate he could assist with regards to judgment calls or advising some of the younger officers. But we're not talking about seniority here. We're talking about very specific general orders within this police department and a very specific state statute that requires a commanding officer to authorize a strip search, being the state statute, and the general order requiring that a shift supervisor authorize that strip search. And Deputy Chief Bukowski testified that, in fact, in Winthrop Harbor, a shift supervisor is a sergeant or above. So there's no indication that Officer Bella was ever led to believe that he was still considered a sergeant by his police department, that he was ever led to believe that he was, in fact, the supervising officer on this shift. And, in fact, the evidence was even more clear that both the chief of police was on duty and available by phone, and there were other sergeants and a deputy chief that could have been called should the police chief not have been available. Counsel, your opponent has argued there is the issue about the written permission of the commander or supervising agent. The state statute also requires that there be a report of the strip search as well. Correct. She has been arguing, well, that may be true, but since the DVD of the whole strip search incident was taken, that that basically stands in lieu of the report because there was sort of a report. What's your response to that argument? Well, I'd like to, first of all, address that by let's look at Officer Bella's intent here. Was his intent when he was executing the strip search of this arrestee, was his intent to have that videotape stand in for his report? And I think there can only be one answer to that, and the answer is no. His testimony was very clear that during his testimony, he never, ever said the video was going to stand in for his report. He also acknowledged when he was called into Deputy Chief Bukowski's office the following day or so after this incident occurred, he acknowledged he should have included the specifics required in the general order in the statute in his report, and he should have included the search in his written report. So his argument was never made previously? Never, never. And I think it's just another attempt for him to excuse his conduct. But even push aside his intent, let's look at what that videotape contained. Did it contain what is required by the state statute? Absolutely not. It did not have the name of the arrestee. It did not specifically identify who was conducting the search. It did not identify the results of the search. No copy of that videotape was ever tendered to the arrestee, and it just simply does not meet the criteria. And the general order had very similar requirements in it, and it didn't meet any of those requirements as well. Excuse me. Doesn't the arrestee, isn't he sort of kept out of the video? That's exactly right. Isn't it the point of the report is to record or to memorialize the search itself? Well, right, and I think these procedures have been very carefully set forth by the legislator to protect the privacy rights that we hold so dear in this country. And if you go through and you make the effort to get the written authorization from a supervisor, and if you get that authorization, then you need to memorialize very specifically exactly how the search was conducted, who it was conducted on, what was the reason, what was the reasonable grounds. Those are all designed to protect the rights of that suspect, and the videotape just doesn't do that. It's also protecting the rights of the police officers. Oh, certainly, yeah. Now, your opponent also puts a lot of weight on the accolades that the officer Vila had in the past, indicating that we should have never even looked at, we didn't have cause to discharge him, and we should have looked at what he's done for the department in the past. What's your response to that? Well, I mean, nobody's taking away Officer Vila's accolades in the past, but accolades in the past do not wipe away 15 separate disciplinary instances over a 14-year career. I can't imagine what job it would be okay to have one serious disciplinary matter over one serious disciplinary matter every year that you work there. That's not a quality employee. No matter what other accolades he may be receiving, he is not following the procedures of this particular police department. Well, so what's our standard of review here? Well, I would argue to the court that the standard is manifest weight of the evidence. This is a factual issue, and although I do see counsel's argument with regards to the interpretation of the statute and considering whether it was a supervisor or commander, I understand that. But I think that's such a far-removed issue from the core of this case that really it's more of the facts that the court needs to consider. And in that case, it's a manifest weight of the evidence standard. So you submit that there was a sufficient basis there was cause for the discharge? Absolutely, absolutely. As I indicated, the evidence is mostly uncontested that he did in fact violate both the state statute and the general order. That is sufficient to show a finding of the violation of that rule is sufficient for discipline. There's plenty of cases indicating a single violation of a rule is sufficient for discipline. Then you add that into the significant disciplinary action that had been taken against this officer during the term of his career, including a very recent reduction in rank. I believe the board appropriately found that there had been sufficient progressive discipline, sufficient attempts to try and correct his poor behavior, and this was really the straw that broke the camel's back and that discharge was in fact appropriate. Thank you very much. Do you wish to reply? Very quickly. I just want to point out that the general order says that it should be a supervisor or a command with a small c. It doesn't necessitate a sergeant. It says somebody in command. And in this case, based on the evidence and based on the testimony of the other officers, Officer Fella was in command of the situation. He was the most senior officer. He was in command of the shift at the time. The state statute itself says police commander or an agent. Now, the chief of police is on duty 24-7. He should be there all the time, but unfortunately nobody can work that many hours. The deputy chief was out on maternity. All the sergeants were not there. At this point, Officer Fella was the agent. But didn't Willis, I think it was Willis who said to him, if I were you or if it were me, I'd call the chief. And the plaintiff said he wasn't required to. Well, that's because the plaintiff believed, Officer Fella believed that he was the shift supervisor and he had the ability to do what he did. But isn't that sort of part of the problem here is that your client seems to think he has a rank that he doesn't have? Well, I think based on the circumstances and based on the fact that there was no other sergeant on duty, he was the most senior officer, he was given direction to all the officers, it's not unreasonable for him to think that he was in charge and commanding of that situation and that he had the authority to do what he did. He did what he did in the best interest of the department. He didn't do anything to conceal. He didn't lie about this. He told them, yeah, I did a strip search. He honestly believed that he was doing the right thing. He didn't intentionally break the rules. He didn't intentionally violate the statute. It's not required, is it, an intentional violation? It's simply a strict liability. You either violate the order or you don't. You either violate the statute or you don't. Right, but if he did violate it, it's such a technical and minor violation that it doesn't rise to the level of cause. And I think it is important to note that in these circumstances, he really truly was doing what he thought was in the best interest, not only for the arrestee to make sure he didn't hurt himself and harm himself, but also for the protection of the jail. And even the chief of police knew that there was a problem. By putting out this order saying you have to put him in a jail cell, he knew that you have to search these individuals before they go in a jail cell. You have to make sure that we are protected and that the jail cell is protected. He recognized the potential danger, and to Officer Bell's credit, he did too. He recognized the potential danger here, and he acted as quickly as he could, and he made a judgment call. In hindsight, he could have done a lot of things differently. He could have just not arrested the person. Are you submitting that putting someone in an orange jumpsuit gives you authorization for a strip search? In order to put somebody in a jumpsuit, you have to – they have to take off their clothes. That's different, take off your clothes versus a strip search. Aren't those two different things? Well, what Officer Bell did is ask the individual to take off his clothes and just bend over so he could see if there was anything in there. He didn't do a cavity search. That is not what happened here. So putting him in an orange jumpsuit necessitated to make sure that he wasn't hiding any drugs, that he wasn't hiding any weapons. And based on our order, he did what he was supposed to do. How do we know what he did and what he didn't do? The video, the DVD, it has – it doesn't show the actual search. Of course, that would be inappropriate to do that. What it does show is it has the voice audio of every command that Officer Bella was giving. So you do hear every command. You do know what is being told to the person. And you also see Officer Bella standing in the hallway on the video while the individual is in the cell. So you know he didn't go in there and do a cavity search because the DVD shows that. And you know what he was telling the individual by listening to the DVD. Counsel, if we would agree with your position and overturn the ruling of the board, wouldn't we simply, in essence, be reweighing the evidence and substituting our judgment for that of the board? And is that appropriate? Well, I think what you'd be doing is telling them that their action was capricious and arbitrary and that there was no cause based on the circumstances of this particular case. Thank you. Thank you very much.